UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARDO EDROSA,<br><br>                              Plaintiff,<br><br>v.<br><br>DR., JOHN K. CHAU,<br><br>                              Defendant. | Case No.: 19cv88-CAB-MDD<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT [Doc. No. 51]** |

Pending before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint. [Doc. No. 51.] For the reasons set forth below, the motion is **GRANTED.**

## PROCEDURAL BACKGROUND

On January 12, 2019, Plaintiff filed a complaint under the Civil Rights Act 42 U.S.C. §1983 against Defendants J. Chau, California Department of Corrections and Rehabilitation, erroneously sued as Richard J. Donovan Correctional Facility, California Correctional Health Care Services, G. Casian, P. Jayasundara, and F. Sedighi. [Doc. No. 1.] On April 29, 2019, Defendants filed a motion to dismiss the original complaint. [Doc. No. 11.] On July 2, 2019, Plaintiff filed a motion for leave to file an amended complaint. On July 5, 2019, the Court granted Plaintiff's motion for leave to file an

amended complaint [Doc. No. 18], and the motion to dismiss the original complaint became moot.

On January 13, 2020, Plaintiff filed the First Amended Complaint ("FAC") [Doc. No. 30.] On May 29, 2020, Defendants filed a motion to dismiss the FAC. [Doc. No. 51.] On July 6, 2020, Plaintiff filed an opposition. [Doc. No. 53.] On July 14, 2020, Defendants filed a reply to the opposition. [Doc. No. 54.]

## ALLEGATIONS OF FAC

### I. TREATMENT IN 2008 AT WASCO STATE PRISON

Plaintiff was diagnosed with hepatitis C on May 7, 2008. (Doc. No. 30, FAC, at 17, ¶ 23.) CDCR has set forth certain criteria that medical staff must follow with regard to the treatment of hepatitis C. (*Id*. at 17-18, ¶¶ 25, 26.)[1] Therefore, even though Plaintiff wanted treatment for his hepatitis C, it was not permitted under the criteria in place. (*Id*. at 17, 28, ¶¶ 25, 64.) Furthermore, "this criteria prohibits employed doctors from ordering hep C treatment even if that is what they want to do," because inmates must receive "pre-approval" for treatment by an "oversight committee prior to beginning treatment." (*Id*.) Plaintiff's condition was monitored with blood work at Wasco State Prison. (*Id*. at 17, ¶ 25.)

### II. TREATMENT FROM 2009 TO 2013 AT KERN VALLEY STATE PRISON

In 2009, Plaintiff again requested treatment for his hepatitis C. (FAC at ¶¶ 17- 18, 26.) He also wanted an MRI, cat scan, ultra sound, and a liver biopsy because he had abnormal blood work. (*Id.*) These requests were denied.

In 2011, Plaintiff had a liver biopsy, and was diagnosed with stage 1 fibrosis. (FAC at 18, ¶ 28.) At that time, Plaintiff's "blood levels were off ALT 86.0 and 84.0 (normal 30-65), Bilirubin 1.75 and 1.99 (normal 0.2 – 1.5), Alpha Fetoprotein tumor marker 8.7

---

[1] Defendants' Request for Judicial Notice ("RJN") [Doc. No. 51 at 11, nn. 2, 3] is GRANTED pursuant to Fed.R.Evid. 201. It is the CCHCS, not the CDCR, that promulgates the criteria for treatment of hepatitis C.

2

(normal 43)." (FAC at 19, ¶ 31.) Plaintiff continued to fail to meet the treatment criteria, and did not qualify for further testing. (*Id.*)

### III. TREATMENT FROM 2013 TO CURRENT AT DONOVAN

At Donovan, Plaintiff was referred to Defendant Jayasundare, a nurse practitioner specializing in hepatitis C, and treated with him from 2014 to 2018. (FAC at 19, 23, ¶¶ 33, 49.) Plaintiff complained about his symptoms at each visit, and told Jayasundara that "the doctors refused to treat plaintiff for his Hep C unless it was recommended by Jayasundara." (*Id.*) Jayasundara told Plaintiff there were very strict criteria for the treatment of hepatitis C put in place by an oversight committee. (*Id.* at 24, ¶ 51.) Jayasundara said that the decision to treat inmates with hepatitis C was not done on an individual basis, but based on a number of criteria that an inmate had to meet to even be considered for treatment. (*Id.*) He also told Plaintiff that inmates who used drugs, or were expected to use drugs, including alcohol, could be denied treatment. (*Id.* at 24, ¶ 52.)

Plaintiff continued to request treatment. On January 16, 2014, Plaintiff told Defendant Dr. Chau that he would like treatment for his hepatitis C, and identified tiredness, uncontrollable itching, and stomach pains "over or near his liver" as symptoms. (*Id.* at 19-20, ¶ 34.) Dr. Chau denied Plaintiff's request, stating he did not meet the criteria for treatment. (*Id.*)

On August 20, 2015 and April 11, 2016, Plaintiff saw Defendant Dr. Casian. At that time, Plaintiff had a viral load number of over 12,000,000. (FAC at 21, ¶ 42.) Plaintiff asked Dr. Casian for treatment, including a new liver biopsy since the last results were from 2011, and he "feared and felt" his liver condition was "much worse." (*Id.*) Dr. Casian stated she could not order treatment, and the referral would need to come from the hepatitis C specialist. (*Id.*) Dr. Casian allegedly told Plaintiff he should change his ways because it was his "low life drug use that was going to kill him and he should have learned his lesson by now." (FAC at 22, ¶ 45.)

Defendant Dr. Sedighi began treating Plaintiff in 2017, and refused to order any treatment until an ultrasound was ordered on November 20, 2017. (*Id.* at 25- 26, ¶ 58.)

After that ultrasound, Plaintiff began receiving treatment for hepatitis C, but he already had cirrhosis of the liver. (*Id*. at 26-27, ¶ 60.)

Plaintiff alleges CDCR's practice of having an oversight committee determine which inmates with hepatitis C can be referred for treatment discriminates against inmates with the disease, and drug users. (FAC. At 28, ¶ 64.) He argues it therefore violates the ADA and RA. (*Id*., at 28, ¶ 65.)

Plaintiff believes he should have been treated in accordance with the recommendations found in the book "Hepatitis & Liver Disease, authored by Dr. Melissa Palmer, an internationally renowned hepatolist," and that if Defendants had followed Dr. Palmer's recommendations, he would not have developed cirrhosis. (FAC at 18019, ¶ 29.) Dr. Palmer's recommendations include: (1) treating hepatitis C with interferon "to stop or slow the progression of the disease before any liver related complications develop." (*Id.*); and (2) performing liver biopsies more frequently because "a liver biopsy that is 3 to 5 years old is worthless." (*Id.* at 22, ¶ 47.)

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed.R.Civ.P. 8(a)(2)), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' " *Id*. (*quoting Twombly*, 550 U.S. at 555). Determining

whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to " 'a legal conclusion couched as a factual allegation,' " *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (*quoted in Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir.2001).

Finally, leave to amend may be denied if the court determines that "allegation[s] of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing Co.v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401(9th Cir. 1986).

## DISCUSSION

A.  Eighth Amendment Deliberate Indifference Claim.

To maintain an Eighth Amendment claim based on prison medical treatment under 42 U.S.C. § 1983, an inmate must show "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "[T]here is a two-pronged test for evaluating a claim for deliberate indifference to a serious medical need:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This

> second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.["]

*Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096).

A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1970). The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id*. "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060. Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care (without more), nor a difference of opinion over proper medical treatment, is sufficient to constitute an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105–06; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1984).

Here, Plaintiff acknowledges he received numerous medical consults, exams, tests and second opinions in accordance with CCHCS criteria. [FAC at 6-9, 17-18, 24, 28.] Importantly, Plaintiff does not allege Defendants failed to follow CCHCS criteria for

treating Hepatitis C.² Rather, Plaintiff alleges the CCHCS criteria are defective because they do not comport with the recommendations of Dr. Melissa Palmer, an internationally renowned hepatologist. [FAC at 18, ¶29.] These allegations, however, amount to a difference in medical opinion only, and therefore fail to state a claim for relief. *See Estelle*, 429 U.S. at 105-06. *See also Hollis v. Director of Corrections*, 560 F.Supp.2d 920, 926-927 (C.D. Cal. 2008)(plaintiff's allegation that prison medical staff denied him treatment for hepatitis C due to CCHCS criteria did not state a cognizable §1983 claim against either the staff or the entities sued because it amounted to a difference of medical opinion); *Woods v. Harrington*, No. 1:09-CV-02007 GSA PC, 2010 WL 4624125, at *3 (E.D. Cal. Nov. 4, 2010)(denying treatment for hepatitis C to a prisoner because he does not meet the treatment program requirements does not amount to deliberate indifference). Moreover, because Plaintiff concedes he was treated pursuant to CCHCS criteria, leave to amend would be futile. Accordingly, the motion to dismiss the Eighth Amendment Deliberate Indifference Claim is **GRANTED WITHOUT LEAVE TO AMEND**.

B. Qualified Immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Qualified immunity involves a two-part inquiry: first, "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," and second, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)).

---

² Plaintiff specifically alleges that "the use of a 'LIST' as to who gets treatment is the cause of the denial of the treatment that the plaintiff needs to save his life. . . . That the use of a list is the proximate cause of the plaintiff's injuries." [FAC at 9, ¶VIII.] In his opposition to the motion to dismiss, Plaintiff confirms that it is the CCHCS criteria themselves which he believes constitute deliberate indifference. [Doc. No. 53 at 3.]

7

Under the second prong of the qualified immunity test, the Court must decide if the alleged violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment "was clearly established at the time of the officer's alleged misconduct." *C.V. by and through Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016) (citations omitted).  If not, the officer receives qualified immunity.  To be clearly established, a right must be "sufficiently clear that every 'reasonable official would [have understood] that what [the official] is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  Put another way, only the "plainly incompetent" official will not enjoy qualified immunity.  *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam).

Here, even if there was an Eighth Amendment violation, given that Defendants followed CCHCS criteria, they are entitled to qualified immunity.  *See Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019)(medical personnel who are simply following the criteria developed by others are entitled to qualified immunity and cannot be liable under §1983 for any violation of a prisoner's Eighth Amendment rights).  *See also Hollis*, 560 F.Supp.2d at 926-927; *Woods*, 2010 WL 4624125, at *3.  Therefore, the motion to dismiss the Eighth Amendment claims based upon qualified immunity is **GRANTED WITHOUT LEAVE TO AMEND**.

C. RA and ADA claims.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Because Title II of the ADA was modeled after § 504 of the Rehabilitation Act of 1973, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v.*

*Regents of the Univ. of Cal.,* 166 F.3d 1041, 1045, n. 11 (9th Cir.1999); *see Coons v. Sec'y of the United States Treas*., 383 F.3d 879 (9th Cir.2004).

"In order to state a claim under Title II of the ADA, a plaintiff must allege: (1)he 'is an individual with a disability;' (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability. ' " *O'Guinn v. Lovelock Corr. Ctr.,* 502 F.3d 1056, 1060 (9th Cir. 2007)(*quoting Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002) (per curiam)). "Similarly, to state a claim under the Rehabilitation Act, a plaintiff must allege (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *O'Guinn* at 1060 *(citing Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir.2001)).

Here, Plaintiff alleges that Defendants violated the ADA and RA when he was denied treatment for hepatitis C because he did not meet the criteria for treatment. However, failure to provide medical care for a disability does not constitute an ADA violation. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled on other grounds by Horton v. City of Santa Maria*, 915 F.3d 592, 599-600 (9th Cir. 2019). Moreover, Plaintiff admits that he never qualified for hepatitis C treatment under established criteria. Therefore, he cannot meet the "qualified to participate in or receive the benefit of some public entities services" element of the ADA/RA cause of action. *O'Guinn*, 502 F.3d at 1060. Therefore, the motion to dismiss the ADA and RA causes of action is **GRANTED WITHOUT LEAVE TO AMEND**.

C.  Due Process claim.

Plaintiff alleges, without elaboration, that Defendants' alleged deliberate indifference in medical care is violative of the Fourteenth Amendment.

"To establish a violation of substantive due process ..., a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir.1996) (citations, internal quotations, and brackets omitted), cert. denied, 520 U.S. 1240, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

In this case, the Eighth Amendment "provides [the] explicit textual source of constitutional protection...." *Patel*, 103 F.3d at 874. Therefore, the Eighth Amendment rather than the Due Process Clause of the Fourteenth Amendment governs Plaintiff's claims of deliberate indifference in medical care. As discussed above, Plaintiff's claims under the Eighth Amendment fail. Accordingly, Plaintiff's due process claim also fails. Therefore, the motion to dismiss the due process claim is **GRANTED WITHOUT LEAVE TO AMEND**.

D.  CDCR and CCHCS.

Plaintiff has named CDCR and CCHCS in his Section 1983 claims regarding his medical care. However, both entities are immune from suit under the Eleventh Amendment.

The Supreme Court has held "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *see also Alabama v. Pugh*, 438 U.S. 781. 782 (1978) (per curiam) (holding a lawsuit against the State of Alabama and Alabama Board of Corrections was barred by the Eleventh Amendment). There are only three

exceptions to this general rule. *Douglas v. Calif. Dept. of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001). First, the State may waive its Eleventh Amendment defense. *Id*. Second, "Congress may abrogate States' sovereign immunity by acting pursuant to a grant of constitutional authority." *Id*. (citations omitted). Third, a suit seeking prospective injunctive relief may proceed. *Id*. None of the exceptions apply here and, therefore, both entities are immune from suit. In fact, the Ninth Circuit has held that CDCR is an arm of the state and therefore immune from suit under the Eleventh Amendment. *Brown v. Cal. Dept. of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) ("The district court correctly held that the California Department of Corrections ... [was] entitled to Eleventh Amendment immunity."); *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) ("[A]gencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." (internal quotation marks omitted).) Therefore, the motion to dismiss CDCR and CCHCS is **GRANTED WITHOUT LEAVE TO AMEND**.

E. Injunctive Relief.

Plaintiff has been transferred to another prison[3], is receiving interferon treatment for his hepatitis C [FAC at 26, ¶60], and is no longer being treated by any of the Defendant medical staff. As a result, Plaintiff's claims for injunctive relief are moot. *Wiggins v. Rushen*, 760 F.2d 1009 (9th Cir.1985)(claims for non-monetary relief brought under 42 U.S.C. §1983 are moot if the prisoner-plaintiff is no longer subject to the alleged illegal conduct); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991)(injunctive relief claims dismissed where prisoner is transferred to another prison that is not the subject of the underlying claim). Therefore, the motion to dismiss the injunctive relief is **GRANTED WITHOUT LEAVE TO AMEND**.

/ / / / /

/ / / / /

---

[3] Defendants' RJN [Doc. No. 51 at 24, n. 6] is **GRANTED** pursuant to Fed.R.Evid. 201. Plaintiff is currently housed at California Men's Colony.

F. State Law Claims.

Given that the federal claims have been dismissed, pursuant to 28 U.S.C. §1367(c)(3), the Court declines to exercise supplemental jurisdiction over the state law claims. Therefore, the motion to dismiss the state law claims is **GRANTED WITHOUT PREJUDICE** to being refiled in state court.

## CONCLUSION

For the reasons set forth above, the motion to dismiss the FAC is **GRANTED**. The Clerk shall enter judgment accordingly and **CLOSE** the case.

**IT IS SO ORDERED.**

Dated: September 11, 2020

Hon. Cathy Ann Bencivengo
United States District Judge